# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23961-Civ-TORRES

JULIA AGUILERA,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security
Administration,

        Defendant.

_____/

## ORDER ON THE PARTIES'
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by Plaintiff Julia Aguilera ("Plaintiff") [D.E. 20] and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security Administration ("Defendant") [D.E. 21], on whether the Administrative Law Judge ("ALJ") properly weighed the evidence in reaching his unfavorable decision. Under the limited standard of review that governs this case, the Court finds that substantial evidence supports the ALJ's unfavorable determination. For the reasons stated below, it is therefore Plaintiff's Motion for Summary Judgment [D.E. 20] is **DENIED**, Defendant's Motion for Summary Judgment [D.E. 21] is **GRANTED**, and the ALJ's Decision is **AFFIRMED**.

# *I.     BACKGROUND*

On September 12, 2013, Plaintiff filed an application for Supplemental Security Income ("SSI").   [Tr. 85].   The Social Security Administration denied Plaintiff's initial application on October 8, 2013 and denied the application for reconsideration on February 3, 2014.   [Tr. 109-11, 117-21].   Plaintiff had a hearing before an ALJ on July 20, 2015.   [Tr. 20-53].   On February 3, 2016, the ALJ, Henry Kramzyk, issued an unfavorable decision finding Plaintiff not disabled.   [Tr. 54-77]. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 11, 2016.   [Tr. 1-4].   Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. § 1383(c).

Plaintiff was 53 years old on the date of the ALJ's decision.   [Tr. 28, 77].   She was allegedly orphaned at the age of 8 and abused by her subsequent family. Plaintiff has purportedly struggled with mental illness since her youth and attempted suicide in the past.   She has an eighth grade education and no past relevant work.   [Tr. 29, 75].   Plaintiff alleges she is disabled because of depression, hypothyroidism, and anxiety.   [Tr. 241].   Her alleged onset date is September 12, 2013, the date she applied for SSI.   [Tr. 85]; *see also Stone v. Comm'r of Soc. Sec.*, 596 F. App'x 878 (11th Cir. 2015) ("For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.").

After reviewing and evaluating the record evidence, the ALJ found Plaintiff not disabled.   [Tr. 60-77].   He found that Plaintiff had the following severe impairments: major depressive disorder and adjustment disorder.   [Tr. 62].   The

ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. [Tr. 64]. The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels but with non-exertional limitations. *See id*. She cannot climb ladders, ropes, or scaffolds and is limited to jobs that do not require English fluency. *See id*. She is able to understand, remember, and carry out short, simple, repetitive instructions. *See id*. She is able to sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on short, simple, repetitive instructions. *See id*. She can use judgment in making work decisions related to short, simple, repetitive instructions, and requires an occupation with a set routine and procedures and few changes during the workday. *See id*. She cannot perform fast-paced production work, but she can maintain regular attendance and be punctual within customary tolerances. *See id*. She can perform activities within a schedule. *See id*. She must avoid concentrated exposure to wetness, including wet, slippery, uneven surfaces, and she must avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery. *See id*. Relying on a vocational expert ("VE"), the ALJ found that Plaintiff was capable of performing work and was not disabled in the eyes of the law. [Tr. 75-77].

## II.     *STANDARD OF REVIEW*

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record as a whole to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g);

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In testing for substantial evidence, the court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive and we must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

4

### III.     ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves he or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted). The steps are followed in order to determine if the claimant is disabled. "'If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (internal quotation and citation omitted).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If the ALJ does not make such a finding, then the inquiry ends. *See* 20 C.F.R. § 404.1520(c). At step three, the ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into

the claimant's ability to perform other work.   *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work.").   If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed and benefits are awarded.   *See* 20 C.F.R. § 404.1520(d).   Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work.   If the claimant cannot perform past relevant work, then a prima facie case of disability is established.   The ALJ assesses a claimant's RFC at this stage, based on all of the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments.   *See* 20 C.F.R. § 416.945(a)(1).   This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform. *See* 20 C.F.R. § 404.1520(e)-(f).

### A.  *The ALJ Properly Relied on the Vocational Expert*

"A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments."   *Phillips,* 357 F.3d at 1240.   "When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy."   *Id*. (footnote omitted).   "In order for a vocational expert's

testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Gordon v. Astrue*, 249 F. App'x 810, 812–13 (11th Cir. 2007) (citing *Vega v. Comm. of Social Security*, 265 F.3d 1214, 1220 (11th Cir. 2001)). The ALJ is not required to include findings in the hypothetical that the ALJ finds to be unsupported. *See Crawford*, 363 F.3d at 1161. Instead, the hypothetical needs to only include limitations supported by the record. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).

Plaintiff first argues that the ALJ failed to comply with Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) because the ALJ purportedly did not ask the VE about inconsistencies between his testimony and the Dictionary of Occupational Titles ("DOT"). According to SSR 00-4p, occupational evidence by a VE should be consistent with the information provided by the DOT, and the ALJ must elicit a reasonable explanation from the VE if there is an apparent conflict between the two:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

2000 WL 1898704, at *2; *see also Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) ("SSR 00–4p states that when a VE provides evidence about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between that VE's testimony and the DOT. When the VE's testimony is inconsistent with the DOT, the ALJ must resolve this conflict before relying on the VE to determine whether the individual is or is not disabled.") (citations omitted). Because the ALJ allegedly failed to properly resolve the apparent conflicts between the testimony of the VE and the DOT, Plaintiff argues that remand is necessary for a proper consideration of this issue.

But, Plaintiff's argument misses the mark because the ALJ specifically asked the VE if his testimony was consistent with the DOT. [Tr. 50]. And the VE testified unequivocally in response that it was consistent and clarified that since the DOT does not address attendance and punctuality, the VE relied on his professional experience, research, labor market surveys, and job search activities with respect to those two areas. [Tr. 50-51]. Therefore, the ALJ explicitly complied with SSR 00-4p by inquiring about any potential conflict between the VE's testimony and the DOT.

Relatedly, Plaintiff argues that the VE's testimony regarding the exertional level of a packer job, and whether Plaintiff could hypothetically perform the duties of this occupation, was improper. Pursuant to the DOT, Plaintiff contends that the job is allegedly performed at the light level of exertion and should have been excluded from consideration by the ALJ's instructions to focus only on jobs in the medium level

of exertion. In other words, the job purportedly did not represent a properly identified category of work that Plaintiff is capable of performing under the ALJ's own functional limitations. Consequently, consideration of this position should have allegedly been precluded.

Yet, Plaintiff's contention is unconvincing because there is no duty on the ALJ to independently examine the correctness of the VE's testimony if the VE testifies that there is no conflict with the DOT, especially when counsel fails to raise the issue before the ALJ. *See Cousins v. Colvin,* 2013 WL 5278271, at *6 (M.D. Fla. Aug. 23, 2013) ("[I]f the ALJ asks the VE whether any conflicts exist between the DOT and the VE's statements, and the VE responds in the negative, 'the ALJ is not required independently to identify whether there is any inconsistency.' This is especially true when no question of consistency is raised at the hearing by Counsel.") (citing *Garskof v. Astrue,* 2008 WL 4405050, at *6 (M.D. Fla. 2008)); *Brijbag v. Astrue*, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31, 2008) ("[T]he ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT.") (citing *Martin v. Commissioner of Social Security,* 2006 WL 509393, at *4-5 (6th Cir. 2006); *Haas v. Barnhart,* 2004 WL 396982, at *5-6 (5th Cir. 2004) (where conflict not brought to the attention of the ALJ it was not reversible error for the ALJ to rely upon the testimony of the VE); *Donahue v. Barnhart,* 279 F.3d 441, 446-47 (7th Cir. 2002); *Lembke v. Barnhart,* 2006 WL 3834104, *14-15 (W.D. Wis. 2006) (reversal is not warranted where plaintiff identifies a conflict after the hearing but during the hearing no conflict was identified

so long as the ALJ complied with SSR-004p by asking the VE at the hearing to identify conflicts)); *see also Gibbons v. Barnhart,* 85 Fed. Appx. 88, 93 (10th Cir. 2003) (no error under SSR 004p where the VE did not identify conflicts with the DOT).

Here, the VE testified that her testimony was consistent with the DOT and Plaintiff never objected to the VE's testimony or questioned the VE's qualifications at the hearing. Therefore, the ALJ properly relied on the VE's knowledge and expertise because there was never any indication that a conflict existed between the VE's testimony and the DOT. *See Leigh*, 496 F. App'x at 975 ("The ALJ asked the VE if there were any inconsistencies between his opinion and the DOT, and the VE responded that there were not. Further, Leigh did not offer any evidence controverting the VE's opinion, nor did she object to the opinion. Even assuming that there was an inconsistency between the VE's opinion and the DOT, the ALJ did not err in relying on the VE's opinion to determine that Leigh was not disabled.").[1]

In Plaintiff's objection to the Court's Report and Recommendation, Plaintiff argues that several decisions support her position that the ALJ must resolve any conflicts by eliciting a reasonable explanation to confirm the consistency of the VE's

[1]  Assuming arguendo that the ALJ erred (which he did not) in relying on the VE's testimony regarding the packer job, the error is harmless because the VE testified that there were other jobs that Plaintiff could perform. [Tr. 49-50]. In other words, a remand is unnecessary because there is no evidence of prejudice as there are still jobs that support the ALJ's step five finding. *See Carroll v. Soc. Sec. Admin., Com'r,* 453 F. App'x 889, 892 (11th Cir. 2011) ("[W]e have held that an agency's violation of its own governing rules must result in prejudice before we will remand to the agency for compliance.") (citing *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. Sept. 1981)).

testimony.  *See, e.g., Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014) ("In this case, the ALJ satisfied this requirement by asking the VE to confirm the consistency of her testimony.  However, the responsibilities of the ALJ do not end there.  If there is an 'apparent unresolved conflict' between VE testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information.'") (quoting SSR 00–4p, 2000 WL 1898704, at *2–4).

Yet, the decisions Plaintiff relies upon do not support Plaintiff's position.  As stated earlier, the ALJ provided adequate reasons in support of her opinion that the testimony provided did not conflict with the DOT.  The VE relied upon her professional experience, research, her work with employees, employers, staffing agencies, and temporary agencies, as well as labor market surveys.  Therefore, the VE provided adequate explanations for the apparent inconsistencies with the DOT and supplemented her answer with several sources in support of her position.  Plaintiff also ignores the facts presented in this case, where Plaintiff failed to raise the issue before the ALJ despite having the opportunity to do so at the hearing.  The only reason proffered as to why Plaintiff failed to do so is because attorneys and claimants should allegedly not be held responsible for understanding the findings that an ALJ will make.  Plaintiff has no persuasive reason as to why the issue was not presented to the ALJ in this case and therefore Plaintiff's argument lacks merit.  *See Cousins,* 2013 WL 5278271, at *6 ("[I]f the ALJ asks the VE whether any conflicts

11

exist between the DOT and the VE's statements, and the VE responds in the negative, 'the ALJ is not required independently to identify whether there is any inconsistency.' *This is especially true when no question of consistency is raised at the hearing by Counsel.*") (emphasis added) (citation omitted).

Third, Plaintiff contends that the remaining jobs identified by the vocational exert – the bagger and cleaner positions – require a level of English proficiency that is beyond the Plaintiff's capabilities. As support, Plaintiff argues that in Section 7 of the ALJ's decision, the ALJ states that Plaintiff is not able to communicate in English and for all practical purposes is considered to be illiterate. Both jobs recommended by the VE allegedly require an English language level of L1, which is defined in the DOT in three different ways: (1) reading – recognizing the meaning of 2,5000 tow and three syllable words and reading at a rate of 95 to 120 words per minute; (2) writing – simple sentences containing subject, verb, and object, and numerical series, names, and addresses; and (3) speaking – simple sentences using normal word order, including present and past tenses. Because both jobs require a minimum level of English proficiency, Plaintiff suggests that all of the jobs identified were inappropriate for consideration and that the ALJ's decision actually demonstrates that Plaintiff is disabled.

But, Plaintiff's arguments are unpersuasive. The ALJ asked the VE to identify jobs that do not require English fluency and the VE complied with that request. [Tr. 49-50]. The VE did not identify any inconsistencies between his testimony regarding English fluency and the DOT, and Plaintiff failed to object or

questioned the possibility that an inconsistency might exist. As such, the ALJ was entitled to rely on the VE's expertise and testimony. *See Phillips*, 357 F.3d at 1240 ("A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.").

Furthermore, as for Plaintiff's focus on section 7 of the ALJ's findings – that Plaintiff is considered the same as an illiterate person – Plaintiff's argument is misplaced. In section 7, the ALJ evaluated Plaintiff's inability to communicate in English as an educational factor, not a limitation. [Tr. 75] (citing C.F.R. § 416.964 ("Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor.")). The fact that the ALJ considered Plaintiff illiterate for purposes of her educational background does not mean that Plaintiff is functionally unable to perform any work. That level of reasoning would equate to anyone lacking proficiency in the English language to qualify as disabled under the Social Security Act. According to the Social Security regulations, an individual who is illiterate may still perform a range of unskilled work as it only constitutes one factor in the determination of an individual's overall disability. *See* § 404.1564. Therefore, Plaintiff's argument fails because the VE identified unskilled jobs that Plaintiff could perform despite her lack of English fluency and the ALJ incorporated those findings into the unfavorable decision. [Tr. 49-50].

Finally, Plaintiff argues that the cleaner job that the VE recommended requires reasoning and mathematics skills beyond Plaintiff's capabilities.

According to the DOT, the cleaner job requires a GED reasoning level of 2 and a math level of 2. This job purportedly contradicts the ALJ's earlier findings in the decision where the ALJ found that Plaintiff is not able to understand and carryout detailed instructions. In other words, Plaintiff argues that those GED levels are inconsistent with simple routine work. Given Plaintiff's limited education and lack of any work experience, it was allegedly improper to consider the cleaner job as a possible area of employment.

However, Plaintiff's argument lacks merit because GED levels are unrelated to the concentration requirements of a job. According to the DOT, a GED involves the educational level an individual would need for satisfactory job performance:

> "GENERAL EDUCATION DEVELOPMENT (GED) . . . embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained from experience in elementary school, high school, or college. However, it may be obtained from experience and self-study.

*Dictionary of Occupational Titles*, Appendix C, 1991 WL 688702 (4th ed. 1991). Therefore, an individual's functional limitations cannot be compared to a GED level because the two are, quite simply, unrelated. In other words, the DOT does not equate GED levels with the mental demands of a job. And even if GED levels and functioning were related, courts in the Eleventh Circuit have held that a required reasoning level of 2 or 3 is not inconsistent with the ability to perform simple tasks. *See Hobbs v. Colvin*, 2015 WL 628763, at *5 (M.D. Fla. Feb. 12, 2015) (citing *Gray v. Colvin,* 2014 WL 1118105, at *8 (N.D. Fla. Mar. 20, 2014) (quoting *Hurtado v. Astrue,*

2010 WL 1850261, at *11 (S.D. Fla. Apr. 14, 2010))); *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661-62 (11th Cir. 2007) (not inconsistent); *Leigh*, 496 F. App'x at 974–75 (same). Accordingly, the record demonstrates that the ALJ properly relied on the VE and that the decision comports with Eleventh Circuit precedent.

## B. *Substantial Evidence Supports the Weight Given to the Medical Opinions*

An ALJ evaluates several factors when determining how much weight to accord a medical opinion, including: (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's "opinion is with the record as a whole"; and (5) the physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors apply to both examining and non-examining doctors. *See id*. Absent good cause, the ALJ must give a treating[2] physician's opinion substantial or considerable weight. *See id.* (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. "When electing to disregard the opinion of a treating

---

[2] A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

physician, the ALJ must clearly articulate its reasons." *Id.* Furthermore, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore. *See Winschel*, 631 F.3d at 1179 (reiterating that without a statement from the ALJ, a reviewing court would be unable to determine whether the disability decision was rational and supported by substantial evidence).

### 1. *Dr. Deiederich*

As a whole, Plaintiff argues that the ALJ improperly rejected the medical source opinion of a treating psychiatrist, Dr. Deiederich, without providing any appropriate reasons for doing so. On April 8, 2014, Dr. Deiederich completed five forms regarding Plaintiff's mental impairments. [Tr. 402-410]. She opined, in relevant part, that Plaintiff could not work [Tr. 403], is disabled [Tr. 404], will be off task forty percent of the time [Tr. 406], may be unreliable due to illness [Tr. 406], and meets the criteria for a disability under listing 12.04 and 12.06. [Tr. 408, 410]. Yet, the ALJ presented three reasons for according Dr. Deiederich's medial opinions little weight – none of which Plaintiff alleges are supported by applicable facts or law. We will discuss the parties' arguments in turn.

First, Plaintiff argues that the ALJ ignored Dr. Deiederich's medical opinions with respect to Plaintiff's functional abilities. The exclusion of medical opinions is purportedly not reserved to the Commissioner and must be considered in an ALJ's decision. Other than conclusions as to the Plaintiff's disability, Dr. Deiederich opinions allegedly remain valid and require appropriate analysis by the ALJ.

Yet, Plaintiff's argument is misplaced because the ALJ did not ignore Dr.

Deiederich's medical opinions. The ALJ only accorded it little weight. More importantly, the ALJ properly explained that Dr. Deiederich's medical opinions were not entitled to any significant weight because they were conclusory on legal issues reserved to the Commissioner – i.e. whether the Plaintiff is disabled in the eyes of the law. [Tr. 74]. Opinions on whether a claimant is disabled, unable to work, or meets a listing are not "medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927. "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996).

Therefore, the ALJ's decision to accord little weight to Dr. Deiederich's medical opinions that usurped the role of the Commissioner is supported by substantial evidence. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877–78 (11th Cir. 2013) ("[T]he Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled.") (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (noting that a claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive)).

Second, Plaintiff contends that, without any concrete evidence, the ALJ

concluded that Dr. Deiederich improperly relied on Plaintiff's subjective reports of symptoms and limitations. Plaintiff takes issue with the ALJ's assessment because Plaintiff was purportedly diagnosed through a psychiatric evaluation and a mental status examination – both of which provide an objective basis for Plaintiff's symptoms. Because Dr. Deiederich is specially trained to evaluate a patient's subjective complaints, there are purportedly no factual inconsistencies or other concrete reasons to question Dr. Deiederich's medical opinions.

However, Plaintiff's argument lacks any merit because the ALJ reached a reasonable conclusion (given the lack of objective findings in Dr. Deiederich's medical opinions) that Dr. Deiederich relied heavily on the subjective report of symptoms and limitations provided by the Plaintiff. Specifically, the ALJ determined that Dr. Deiederich appeared to uncritically accept as true most, if not all, of what the Plaintiff reported. And, for other reasons stated throughout the ALJ's decision (i.e. the Plaintiff's inconsistent claims with respect to daily living and her related symptoms), there were persuasive reasons for questioning the reliability of Plaintiff's subjective complaints. Accordingly, the ALJ's assessment that Dr. Deiederich improperly relied on Plaintiff's subjective reports of symptoms is supported by substantial evidence because those allegations were questionable and inconsistent with the record evidence.

Third, Plaintiff argues that the ALJ's decision – to discount Dr. Deiederich's medical opinions because they were allegedly inconsistent with her treatment notes – was erroneous. Plaintiff contends that the ALJ failed to identify any

inconsistencies and suggests that the ALJ's position appears to be based on generally benign findings on mental status examinations. Because the ALJ's decision does not allegedly explain how Dr. Deiederich's medical opinions were inconsistent her treatment notes, Plaintiff argues that the ALJ's decision lacks substantial evidence and must, at the least, be remanded for further consideration.

Yet, Plaintiff's argument is unconvincing because the record shows that, in contrast to the disabling limitations that Dr. Deiederich opined, Dr. Deiederich's medial opinions were inconsistent with the medical evidence of record and her own treatment notes. *See, e.g.*, *Bryant v. Colvin*, 661 F. App'x 686, 692 (11th Cir. 2016) (holding that good cause supported the ALJ's decision to give little weight to the treating physician's opinion where the opinion was inconsistent with treatment records and not supported by the evidence in the record). In fact, the record shows that, in contrast to the disabling limitations in Dr. Deiederich medical opinions, Plaintiff has exhibited mostly normal mental states. Plaintiff has displayed calm or unremarkable mood, has been cooperative, and exhibited unremarkable thought process and content. [Tr. 353, 360-61, 363-65, 413-144, 416, 431, 445-49]. While Plaintiff exhibited impaired memory occasionally, she has exhibited mostly good to fair insight, judgment, and reliability. [Tr. 360, 363, 365, 414, 416, 422, 431, 445-49].

As an additional basis to accord Dr. Deiederich's medical opinions little weight, the ALJ found that it was inconsistent with the Plaintiff's described activities – those of which were not limited to the extent one would expect given the

complaints of disabling symptoms and limitations. For example, Plaintiff testified that she attends church weekly, walks door to door in her neighborhood to distribute religious pamphlets, shop, care for her personal needs, prepare meals, and wash dishes. [Tr. 71]. Plaintiff also testified that since her application date she has been on vacation for three days to visit her brother in law. While a vacation and disability are not necessarily mutually exclusive, the ALJ found that the claimant's decision to embark on a vacation suggests that the alleged symptoms may have been overstated. Moreover, the ALJ noted that the claimant admitted that she has been feeling much better and calmer over the course of the appeal period. Given the inconsistencies between the Plaintiff's testimony and Dr. Deiederich's medical opinions, the ALJ's decision to accord those opinions little weight is consistent with Eleventh Circuit precedent and supported by substantial evidence. *See Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872 (11th Cir. 2016) ("The ALJ was permitted to consider these daily activities when determining the symptoms and severity of Chambers's impairment. Further, because Chambers's own testimony regarding his daily activities contradicted Beaty's opinion, the ALJ did not need to give Beaty's opinion considerable weight.") (citations omitted).

Finally, the ALJ gave Dr. Deiederich's medical opinions little weight because they were conclusory and unsupported by any substantive medical rationale. The ALJ found that the opinions provided very little explanation of the evidence relied upon in forming the opinions, especially since they were inconsistent with Dr.

Deiederich's own treatment records.[3]  The ALJ's finding is supported by substantial evidence because it meets the Eleventh Circuit's definition of good cause, in that an ALJ may disregard a treating physician's opinion if it is conclusory or inconsistent with a doctor's own medical records.  *See Phillips*, 357 F.3d at 1240.  Given the conclusory nature of Dr. Deiederich's medical opinions and the ALJ's thorough discussion of why they lack any medical support, the ALJ's decision to accord the opinions little weight is supported by substantial evidence.

2.  *Dr. Meruelo*

Aside from **Dr. Deiederich**, Plaintiff argues that the ALJ proposed two legally and factually insufficient reasons to accord the findings of consultative physical examiner Dr. Meruelo little weight.  [Tr. 73-74].  Dr. Meruelo opined that Plaintiff can lift and/or carry up to twenty pounds occasionally and ten pounds frequently, sit four to five hours per day, stand two to three hours per day, walk one to two hours per day, occasionally reach and push/pull with the right hand, and could never climb ladders or scaffolds.  [Tr. 530-534].  Because the ALJ allegedly erred in giving Dr. Meruelo's medical opinions little weight, Plaintiff contends that remand is necessary under these circumstances.

First, Plaintiff contends that the ALJ suggested that Dr. Meruelo's assessment was not consistent with other evidence in the record.  However, the record purportedly contains specific evidence that firmly supports Dr. Meruelo's medical

---

[3]  The ALJ noted that the treatment records revealed that the claimant's mental impairments are stabilized with medication.  [Tr. 74].

opinion.  For example, Dr. Meruelo found that Plaintiff suffers chronic low back syndrome as well as osteoporosis and mild but visible dorsal kyphosis.  These findings are allegedly confirmed by objective evidence showing reports of herniated disks in the spine [Tr. 326], x-rays revealing anteriolithesis, severely narrowed disk space, and confirmation of osteopenia [Tr. 484], as well as a recent fall with fracture of the elbow.   [Tr. 511].   Given the documented objective medical evidence in this case, Dr. Meruelo's functional assessment was allegedly reasonable and improperly discredited by the ALJ.

Second, Plaintiff takes issue with the fact that Dr. Meruelo's opinion was given little weight because he only examined Plaintiff on one occasion.  Plaintiff concedes that this point is to be factored into the ALJ's decision, but emphasizes that no reviewing physician has rendered an assessment of Plaintiff's physical limitations because much of the relevant evidence was submitted after the initial and reconsideration decisions.  As a result, Plaintiff suggests that there is no medical evidence in the record to demonstrate that Dr. Meruelo's opinions are not based on sound medical judgment.  Because the actual examination of a claimant is highly valued in disability claims, Plaintiff contends that the ALJ must further consider Dr. Meruelo's opinion and give it the proper weight in light of the other evidence in the record.

Yet, Plaintiff's arguments, with respect to Dr. Meruelo, are unpersuasive because the ALJ's decision is supported by substantial evidence.   The ALJ explained that he gave little weight to Dr. Meruelo's medical opinion, in part, because he only

examined Plaintiff one time and never treated her.   [Tr. 73].   The law in our circuit is clear that "[o]ne-time examiners are not entitled to the same degree of deference as treating physicians."   *Kuykendall v. Astrue*, 2012 WL 3777004, at *5 (N.D. Ala. Aug. 23, 2012); *see also McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) ("[O]pinions are not entitled to deference because as one-time examiners they were not treating physicians.") (citing *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986) (rejecting the application of the treating physician rule in the case of a one-time examiner)). Because Dr. Meruelo is undisputedly a one-time examiner who never treated Plaintiff, his opinions are not entitled to any special deference as a treating physician and may be rejected if the evidence supports a contrary finding.   *See Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

As the ALJ explained in his decision, the severe limitations found in Dr. Meruelo's opinions were inconsistent with the remaining evidence in the record, including his own examination notes.   [Tr. 73]; *see also Bloodsworth*, 703 F.2d at 1240 ("[T]he Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion.") (citations omitted).   In March 2013, Plaintiff stated that she had not been to a doctor in more than three years and at that time, she did not complaint of any back pain.   [Tr. 351].   In October 2013, Plaintiff complained of back pain and herniated disks, but there are no documents in the record to substantiate those allegations at the time.   [Tr. 388].   She was in no acute distress and was able to ambulate with a steady gait.   [Tr. 389].   Her back was

non-tender and her range of motion/alignment were normal. [Tr. 392]. She also exhibited no focal neurological deficits. [Tr. 392]. A May 2015 lumbar x-ray revealed only mild degenerative changes [Tr. 484] and Plaintiff's back was non-tender in July 2015. [Tr. 509-10]. In September 2015, Plaintiff saw Dr. Meruelo for a consultative examination. [Tr. 522]. Her gait was normal, she was able to walk on her heels and toes, and she exhibited normal range of motion/strength in all of her extremities and joints. [Tr. 525]. She also exhibited no specific motor or sensory deficits. [Tr. 525]. Accordingly, the ALJ's decision to accord Dr. Meruelo's medical opinions little weight is supported by substantial evidence because those opinions were inconsistent with the evidence in the record.

## C. *Substantial Evidence Supports the ALJ's RFC Finding*

Next, Plaintiff argues that the ALJ committed reversible error because he failed to conduct a function by function analysis. Specifically, Plaintiff alleges that the RCF failed to account for Plaintiff's documented osteoporosis, dorsal kyphosis, chronic low back pain, and severely narrowed disk space. Plaintiff also contends that Plaintiff's age, limited education, lack of work experience, and inability to communicate in English in conjunction with her weakened bone structure, chronic low back pain, and degenerative disease of the spine were also not considered. Similarly, there is purportedly no consideration in the ALJ's decision of Plaintiff's ability to sit, stand, walk, lift, carry, push, or pull. Because of all these omissions, Plaintiff suggests that the ALJ's decision must be remanded for proper consideration of Plaintiff's RFC.

24

"'The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (quoting SSR 96–8p, 1996 WL 374184). The regulations mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." (SSR 96–8p at 6). "The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). However, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing Dyer, 395 F.3d at 1211)); *see also Gully v. Astrue,* 2009 WL 1580416 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specifically and explicitly set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence.") (citing *Freeman*, 220 F. App'x. at 959–60).

Here, the ALJ found that Plaintiff was capable of performing a full range of work at all levels of exertion, but that she was limited to performing simple, routine, repetitive tasks. In making that determination, the ALJ provided an extensive summary of the evidence of record, explained the evidence relied upon, and identified all exertional and non-exertional limitations that were supported by the record. [Tr. 66-75]. The ALJ further noted that he considered, weighed, and synthesized all of the objective and opinion evidence presented concerning Plaintiff's capabilities, including the hearing testimony. The lack of severe findings or notations from Plaintiff's medical examiners, lack of medical treatment, and Plaintiff's symptom magnification all supported the ALJ's RFC finding. While the ALJ did not conduct a function by function analysis, "he did consider all of the evidence and found that it did not support the level of disability [the claimant] claimed." *Freeman*, 220 F. App'x at 960. Accordingly, Plaintiff's argument lacks merit.

As a separate argument, Plaintiff argues that the ALJ failed to support his functional assessment with an appropriate medical source statement from a treating or examining medical professional, or any other medical source, at least with regard to his assessment of Plaintiff's physical functional abilities. Specifically, once the ALJ discounted the medical opinions of Deiederich and Dr. Meruelo, the record is purportedly devoid of any other evidence sufficient to warrant the ALJ's RFC findings. Therefore, Plaintiff contends that the ALJ's functional assessment does not meet the legally necessary evidentiary requirements and that remand is necessary to correct this error.

To be clear, the RFC is what a claimant can still do despite her limitations and is an assessment based on all the relevance evidence in the record. Although an ALJ considers opinions from medical sources on issues reserved for the Commissioner, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. § 416.927(e)(2). "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." 1996 WL 374183, at *2.

Here, the record contained medical opinions that support the ALJ's RFC finding. More specifically, the record contains opinions from two state agency psychological consultants, who opined that Plaintiff can perform simple work with limitations. [Tr. 93, 105-06]. State-agency consultants are considered experts, and their opinions may be entitled to great weight if supported by the evidence in the record. *See Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902–03 (11th Cir. 2012) ("Finally, the ALJ did not err by relying on the opinions of the non-treating physicians, taken alone, in a way that left its decision unsupported by substantial evidence. The evidence supported a contrary conclusion to [the treating physician's] opinion, and the ALJ was not prohibited from reaching that conclusion simply because non-treating physicians also reached it."). Therefore, the ALJ properly relied on the opinions of the state-agency consultants in assessing the Plaintiff's

RFC. [Tr. 73].[4]

Finally, Plaintiff contends that the ALJ did not consider her non-severe spine impairments in assessing her RFC. But, this argument also lacks merit. In assessing the Plaintiff's RFC, the ALJ discussed Plaintiff's non-severe spine impairments and found that the functional limitations relating to the spine impairments were not warranted in the RFC. [Tr. 70]. More specifically, the ALJ explained that the spine impairments alleged simply did not match the medical evidence. Had the Plaintiff's spine impairments been as severe as alleged, the ALJ reasoned that a reasonable person would expect the Plaintiff to seek out treatment and pain management options. The record did not indicate that Plaintiff ever requested seeing her treating physicians with more frequency, nor did the record show that the Plaintiff attempted to obtain additional treatment for her symptoms. Therefore, the ALJ did not give weight to Plaintiff's spine impairments because the Plaintiff's infrequent treatment and failure to pursue more aggressive treatment indicated that the allegations of debilitating symptoms were simply not as severe as alleged and not appropriate for the RFC analysis.

### D. _Substantial Evidence Supports the ALJ's Credibility Findings_

Plaintiff's final argument in her motion is that the ALJ did not properly consider her subjective complaints of pain and that the Plaintiff's own testimony and

---

[4]     To the extent Plaintiff suggests that the ALJ substituted his opinion for that of the medical professionals, this argument lacks merit. The ALJ merely performed his duty of evaluating the evidence and assessing the Plaintiff's RFC and did not diagnose any conditions. In short, the ALJ considered the evidence in assessing Plaintiff's RFC and supported that finding with substantial evidence.

statements prove the severity of her impairments. For these reasons, Plaintiff contends that the ALJ's credibility findings lack substantial evidence.

Plaintiff's argument is again unpersuasive. The Social Security regulations provide that statements about pain or other symptoms will not alone establish that a claimant is disabled. *See* 20 C.F.R. § 404.1529(a). "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ is not required to accept a claimant's subjective allegations of pain/symptoms and may properly consider the credibility of a claimant when making a determination of disability. *See id.* at 1225-26. But, if the ALJ rejects a claimant's allegations of pain, "he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).

But, a "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562. If a disability is based on subjective evidence and a credibility determination is made against the claimant, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). The ALJ is not required to cite "particular phrases or formulations but it cannot merely be a broad rejection" that

prevents a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *See Foote*, 67 F.3d at 1561; *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987) ("Broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable us to conclude that the ALJ considered her medical condition as a whole.").

In reaching a determination, the ALJ may consider the following factors: (1) treatment history, (2) the type, dosage, effectiveness, and side effects of any medications taken, (3) treatment taken other than medications, (4) any other measures used for relief of pain or other symptoms, (5) any precipitating and aggravating factors, (6) medical source opinions, (7) statements by the claimant or others about pain and other symptoms, (8) information about prior work, and (9) evidence of daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). But, the ALJ is not required to discuss every aforementioned factor. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) ("In sum, the ALJ considered Dyer's activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent with his testimony and the medical record. The ALJ thus adequately explained his reasons").

Here, the ALJ proffered sufficient reasons supported by substantial evidence to support a finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible. [Tr. 67]. First, the ALJ explained that Plaintiff's conservative treatment undermined her allegations of

disabling symptoms [Tr. 69] – a factor that the Eleventh Circuit has found to be proper in making a credibility finding. *See Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) ("A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability.") (citing *Wolfe v. Chater,* 86 F.3d 1072, 1078 (11th Cir. 1996)).

Second, the ALJ considered Plaintiff's daily activities and work history in evaluating her subjective allegations. [Tr. 69, 71]. The Eleventh Circuit has firmly established that an ALJ may consider daily activities in assessing a claimant's credibility. *See Sheldon*, 268 F. App'x at 872 ("A claimant's daily activities may be considered in evaluating complaints of disabling pain.") (citing *Harwell v. Heckler,* 735 F.2d 1292, 1293 (11th Cir. 1984)). The ALJ noted that Plaintiff's ability to walk from door to door to distribute religious pamphlets undermined her argument that she experiences disabling mental and physical symptoms. [Tr. 69-70]. And the ALJ also explained that Plaintiff has no work history – a finding that undermines her allegation that she only recently became unable to work because of her impairments. [Tr. 69, 71].

Third, the ALJ properly considered the effectiveness of Plaintiff's medication in improving her symptoms. [Tr. 70-71]; *see also Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) ("The medical reports stated that Fraga had 'mild' hypertension, which was controlled with medication. When the record indicates that hypertension can be controlled with medication, the hypertension is not disabling.") (citing *James v. Bowen,* 793 F.2d 702, 706 (5th Cir. 1986)). "A medical condition that can

31

reasonably be remedied either by surgery, treatment, or medication is not disabling."
*Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (citing *Lovelace v. Bowen*,
813 F.2d 55, 59 (5th Cir. 1987)).   The ALJ noted that the medications Plaintiff was
taking for her mental impairments made her feel better at times.   [Tr. 70-71, 363,
365, 414, 431].   In December 2013, Plaintiff stated that she felt magnificent and
great, and that she was calm, comfortable, and sleeping well in April 2014.   [Tr.
414].

Despite the aforementioned considerations, Plaintiff contends that the ALJ
failed to account for, evaluate, and discuss evidence showing that Plaintiff suffers
side effects from her medications.   Plaintiff notes that, while Plaintiff did not
directly claim medication side effects, Dr. Deiederich specifically noted that the
Plaintiff's anti-psychotic medications "worsen[ed] her memory and ability to
concentrate."   [Tr. 539].   Furthermore, Plaintiff argues that she testified about how
she suffers medication side effects consisting of drowsiness during the day from
Trazadone, as well as headaches from Celexa.   [Tr. 33, 294].   The ALJ's failure to
properly account for this information purportedly circumvents the Social Security
Administration's own requirements and effectively precludes proper judicial review.
Therefore, Plaintiff argues that the ALJ's decision does not conform to applicable
legal requirements and is not based on substantial evidence.

Yet, Plaintiff's argument is undermined by the fact that the ALJ is not always
required to make findings on the side effects of prescribed medications where there is
little or no evidence.   *See Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985)

("[T]he only indication in the record of side effects is her statement before the ALJ that her medication made her drowsy. Under the circumstances, the ALJ's failure to inquire further into possible side effects did not deprive her of a meaningful opportunity to be heard.") (internal citation omitted). Moreover, Plaintiff did not actually allege that she experienced medication side effects or that they were disabling. While Plaintiff focuses on her allegations of drowsiness, the record shows that her daytime sleepiness resulted from sleep apnea – not medication side effects. [Tr. 469]. Based on Plaintiff's own statements and lack of evidence to support the allegation that the ALJ neglected to consider medication side effects, the ALJ did not err in omitting them in the decision.

Finally, Plaintiff argues that the ALJ improperly considered Plaintiff's failure to seek treatment in assessing her overall credibility. [Tr. 70]. Plaintiff suggests that the ALJ lacked a sufficient basis to make this determination on the facts of this case and that it is insufficient to consider in connection with her credibility. Yet, the Eleventh Circuit established long ago that a failure to seek medical treatment is a proper inquiry into a claimant's credibility. *See Sheldon*, 268 F. App'x at 872 ("A claimant's failure to seek medical treatment is also relevant in assessing credibility") (citing *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (finding that a claimant's failure to seek medical treatment is relevant in assessing credibility)). And as the ALJ explained, "[h]ad the claimant's disabling impairments been as severe as alleged, a reasonable person would expect the claimant to seek out

additional treatment and pain management options." [Tr. 70]. Accordingly, Plaintiff's final argument lack merit.

Because the ALJ articulated explicit and adequate reasons for discrediting Plaintiff's allegations, the ALJ's findings are supported by substantial evidence. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989) ("In sum, the ALJ specifically articulated at least three reasons for rejecting appellant's subjective complaints of pain. Her argument that he improperly discredited her testimony on this point is accordingly without merit."). While Plaintiff may believe that certain evidence supports her subjective complaints, "[t]he question is not whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether or not substantial evidence in the record as a whole can support the ALJ's findings. *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212. The Court therefore finds that the ALJ's conclusions are supported by substantial evidence. For these reasons, Plaintiff's Motion [D.E. 20] is **DENIED** and Defendant's Motion [D.E. 21] is **GRANTED**.

## IV.    CONCLUSION

Substantial evidence supports the ALJ's findings as noted in his unfavorable decision. The ALJ's conclusion applied proper legal standards and any errors

therein did not prejudice Plaintiff and were harmless. For the foregoing reasons, Plaintiff's Motion for Summary Judgment [D.E. 20] is **DENIED**, that Defendant's Motion for Summary Judgment [D.E. 21] is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

      **DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of June, 2017.

                                 */s/ Edwin G. Torres*
                                 EDWIN G. TORRES
                                 United States Magistrate Judge